# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

| | |
|---|---|
| **ROSEMARY MARIE CLARK,** | |
| Plaintiff, | |
| v. | CIVIL ACTION NO.: 3:18-CV-145 (GROH) |
| **NANCY A. BERRYHILL,** **Acting Commissioner of Social Security,** | |
| Defendant. | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

This case arises from the denial of Plaintiff Rosemary Marie Clark's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), Nikki Hall, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel was denied, making the ALJ's decision the final decision of Defendant Nancy A. Berryhill ("Commissioner"), the acting Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 15] be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 17] be **GRANTED**.

## II.    PROCEDURAL HISTORY

On or about February 4, 2015, Plaintiff protectively filed a claim for a period of DIB, with an alleged onset date of disability of October 2, 2014. R. 142. The claim was initially denied on June 25, 2015, and upon reconsideration on September 28, 2015. R. 165, 174. After this denial, Plaintiff filed a request for a hearing. R. 181. On July 19, 2017, a video hearing was held before the Administrative Law Judge, Karl Alexander. R. 59. The ALJ presided over the hearing from Morgantown, West Virginia. Id. Plaintiff, represented by Danielle Banks, Esq., appeared from Martinsburg, West Virginia. Id. Corinna Davies, a vocational expert, also appeared telephonically at the hearing. Id.; R. 377. ALJ Alexander determined that additional medical evidence was necessary to adjudicate Plaintiff's claim. R. 27. Therefore, additional testing/examinations were requested, and a supplemental hearing was to be scheduled when that evidence was available. Id.

On February 22, 2018, that supplemental hearing was conducted by video by ALJ Hall (hereinafter "the ALJ") who presided over the hearing from Morgantown, West Virginia. R. 86. Plaintiff, represented by Ms. Banks, appeared and testified from Martinsburg, West Virginia, and Ms. Davies again appeared telephonically as the vocational expert. Id. On April 23, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act at any time since October 2, 2014, the protective filing date of Plaintiff's application for DIB. R. 43–44. On July 24, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

On September 13, 2018, Plaintiff, through counsel, Carter Zerbe, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision

2

pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record of the proceedings on November 20, 2018. Answer, ECF No. 11; Admin. R., ECF No. 12. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J., ECF No. 15; Def.'s Mot. Summ. J., ECF No. 17. Neither party filed a response. Oral argument on the parties' motions was held before the undersigned on March 5, 2019.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

### III.   BACKGROUND

**A.   Personal History**

Plaintiff was born on May 5, 1959 and was fifty-five years old at the time she made her application for DIB. R. 142. She is 5'4" and weighs approximately 161 pounds. R. 90. Plaintiff is married, and she lives with her husband, her daughter, and her grandson (the son of Plaintiff's daughter) in a three-story house. Id. Plaintiff and her spouse live in an apartment in the basement of the house. Id. Plaintiff has a bachelor's degree in science with a minor in education. R. 91–92. Plaintiff claims she last worked in October 2014. R. 95–96. Plaintiff alleges that she is permanently and totally disabled due to heart

3

disease, lupus, rheumatoid arthritis, gastroparesis, leaky gut syndrome, and osteoporosis. R. 142, 153.

**B.     Medical History**

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. Order, ECF No. 14, at 2. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation. See Pl.'s Mem. Supp. Mot. Summ. J. Ex. 1, at 4–8, ECF No. 15-1; Def.'s Brief Supp. Mot. Summ. J. 2–8, ECF No. 18.

## IV.     THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

4

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant

is determined to be disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V. ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since October 2, 2014, the alleged onset date of Plaintiff's disability. R. 30. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: mild degenerative disc disease of the lumbar spine with mild disc bulges L2–5; mild to moderate degenerative disc disease of the cervical spine C5–6; coronary artery disease with a history or coronary bypass grafting in 2005 and angioplasty in 2007, status post stenting. Id. At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. R. 35. At step four, the ALJ determined that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) performing postural movement occasionally, except never climbing ladders, ropes and scaffolds; work should not require greater than occasional exposure to concentrated levels of extreme temperatures, wetness/humidity, vibrations or fumes/dusts/odors or pulmonary irritants; work should not require exposure to unprotected heights or dangerous unshielded moving mechanical parts.

R. 36. Based on this RFC, the ALJ determined that Plaintiff "is capable of performing past relevant work as a car sales person, an [i]nformation clerk and a teacher's aide . . . ." R. 41. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 43.

## VI.     DISCUSSION

### A.     Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

### B.     Contentions of the Parties

In her Motion for Summary Judgment, Plaintiff argues that the ALJ's decision is arbitrary, contrary to law, and unsupported by substantial evidence. ECF No. 15, at 2.

More specifically, Plaintiff contends that the ALJ's rejection of the numerous opinions of her treating physicians is contrary to agency policy and Fourth Circuit precedent. ECF No. 15-1, at 1, 3. On account of this error, Plaintiff requests that the Court remand her case for a rehearing. Id. at 12.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed as a matter of law. ECF No. 17, at 1. Addressing Plaintiff's argument for summary judgment, the Commissioner avers that the ALJ's analysis of the evidence and decision to discount the opinions of Plaintiff's treating physicians were well-supported by the record. ECF No. 18, at 13. Accordingly, the Commissioner requests that the Court affirm her final decision. Id. at 16.

**C.      Whether Substantial Evidence Supports the ALJ's Decision**

Plaintiff claims that the ALJ failed to properly apply the treating physician rule when evaluating "the numerous opinions of [Plaintiff's] treating physicians." ECF No. 15-1, at 3–4. In two sentences in her memorandum, Plaintiff mentions a medical opinion offered by Gail Hedges, an advanced practice registered nurse who is affiliated with Plaintiff's primary care provider. Id. at 4; R. 1523. The remainder of Plaintiff's memorandum focuses on the ALJ's assignment of little weight to three[1] medical opinions of Michael Rezaian, M.D., a board-certified rheumatologist. ECF No. 15-1, at 4–12. The Commissioner does not address the opinion of Ms. Hedges in her memorandum, but instead focuses solely on the three medical opinions of Dr. Rezaian. See generally ECF No. 18.

---

[1] The ALJ refers to four medical opinions by Dr. Rezaian. R. 39. After reviewing the record and addressing this at oral argument, the undersigned concludes that this is a harmless error in the ALJ's decision and that there are only three medical opinions that were rendered by Dr. Rezaian.

At oral argument, the undersigned inquired into the issue of Ms. Hedges' opinion. Plaintiff did not argue that the ALJ's failure to assign weight to this opinion is reversible error. In fact, Plaintiff maintained that any error committed by the ALJ in failing to assign a weight to Ms. Hedges' opinion is at most harmless error. The Commissioner agreed, that any error with respect to Ms. Hedges' opinion is harmless. The Commissioner also noted that Ms. Hedges is not an acceptable medical source[2] and her treatment records (including her opinion) were not lost on the ALJ.[3] Because Plaintiff failed to raise any allegation of reversible error[4] regarding Ms. Hedges' opinion, the undersigned considers any issue regarding Ms. Hedges' opinion waived. See Critchley v. Colvin, 5:15-cv-08288, 2016 WL 3030211, at *8 (S. D. W. Va. May 4, 2016), aff'd by 2016 WL 3033763; Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014), aff'd by ECF No. 22 (collecting social security decisions recognizing that failure to raise issue in opening memorandum waives that issue). The undersigned will proceed to consider Plaintiff's remaining argument: namely, that the ALJ failed to properly apply the treating physician rule to Dr. Rezaian's three opinions.

### 1. The ALJ's Assignment of Little Weight to Dr. Rezaian's Opinions Is Supported by Substantial Evidence

Plaintiff's allegation of error with respect to Dr. Rezaian's opinions amounts to a claim that the ALJ failed to properly apply the "treating physician rule." ECF No. 15-1, at

---

[2] Under the regulations in effect at the time Plaintiff filed her claim for DIB, an advanced practice registered nurse was not considered an acceptable medical source, 20 C.F.R. § 404.1513(a) (2014), and any opinion rendered by an advanced practice registered nurse was not, therefore, considered a "medical opinion" under the regulatory definitions. 20 C.F.R. § 404.1527(a)(1). As of the most recent regulatory amendments, an advanced practice registered nurse is considered an acceptable medical source. 20 C.F.R. § 404.1502(a)(7).
[3] The ALJ referred to other treatment records from Ms. Hedges in her discussion. See R. 30, 38.
[4] Indeed, at oral argument, Plaintiff disclaimed any allegation of reversible error regarding Ms. Hedges' opinion.

3–4. However, Plaintiff includes additional reasons why she believes the ALJ erred in assigning little weight to Dr. Rezaian's opinions throughout her memorandum. Those reasons include: the ALJ failed to acknowledge that Dr. Rezaian is Plaintiff's treating physician; the ALJ did not discuss how Dr. Rezaian's specialty weighed in her mind; the ALJ did not acknowledge or discuss the fact that Dr. Rezaian examined Plaintiff on multiple times; the ALJ had a duty to investigate the facts and develop the argument both for and against granting benefits; and that the ALJ relied upon her own lay analysis of the raw medical data. Id. at 9–12.

An ALJ must "weigh and evaluate every medical opinion in the record." Monroe v. Comm'r of Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *7 (N. D. W. Va. July 22, 2015) (emphasis added); see 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). When evaluating medical opinions, the ALJ must "go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions . . . and explaining the rationale for doing so." Smith v. Barnhart, 395 F. Supp. 2d 298, 307 (E.D.N.C. 2005). That careful balancing necessarily requires that the ALJ explain why the "medical evidence in the record supports the opinions or how the opinions are consistent with the medical evidence." Buchanan v. Colvin, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016).

"[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). For example, the Commissioner is responsible for determining whether a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Therefore, a medical source that offers an opinion on whether an individual

is disabled or unable to work "can never be entitled to controlling weight or given special significance." SSR 96-5p, 1996 WL 374183, at *5.

However, if a treating source's medical opinion on the nature and severity of a claimant's impairments is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it is given controlling weight. 20 C.F.R. § 404.1527(c)(2). "While the testimony of a treating physician is often accorded greater weight, this 'treating physician rule . . . does not require that the [treating physician's] testimony be given controlling weight.'" Criss v. Comm'r of Soc. Sec., No. 5:16CV86, 2017 WL 2730647, at *3 (N. D. W. Va. June 26, 2017) (emphasis added) (quoting Anderson v. Comm'r of Soc. Sec., 127 F. App'x 96, 97 (4th Cir. 2005)). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, then it should be accorded significantly less weight." Thompson v. Astrue, 442 F. App'x 804, 808 (4th Cir. 2011) (quoting Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

When a treating source opinion is not given controlling weight, the ALJ is to apply the six regulatory factors in determining the weight to give the medical opinion. 20 C.F.R. § 404.1527(c)(2). Those six factors are: (1) the examining relationship, (2) the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Social Security Ruling 96-2p specifically addresses the ALJ's duty of explanation when a treating source opinion is not given controlling weight and the ALJ's decision is a denial of benefits, stating that:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's

11

> medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The ALJ does not need to specifically list and address each factor in his decision, so long as sufficient reasons are given for the weight assigned to the medical opinion. See Pinson v. McMahon, No. 3:07-1056-PMD-JRM, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009) (holding that the ALJ properly analyzed a treating physician's medical opinion even though he did not specifically address each regulatory factor). "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (citations omitted) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1077 (7th Cir. 1992)).

In this case, the ALJ was required to evaluate three opinions from Plaintiff's treating rheumatologist, Dr. Rezaian. Dr. Rezaian's first opinion ("January 2017 opinion") states only that "[d]ue to her ongoing active disease and despite treatment [Plaintiff] continues to get worse. She is not a candidate for gainful employment." R. 1377. In his second opinion ("April 2017 opinion"), Dr. Rezaian states that Plaintiff's "[p]resent disability is expected to last for at least 12 months." R. 1309 (emphasis added). In his third opinion ("January 2018 opinion"), Dr. Rezaian states that Plaintiff is "not a candidate for gainful employment." R. 1525. These statements reflect opinions on an issue reserved to the Commissioner, namely whether Plaintiff is disabled and unable to work. So, the ALJ did not err in giving the January 2017 opinion and those portions of the April 2017

and January 2018 opinions little weight for that reason. R. 39; SSR 96-5p, 1996 WL 374183, at *5.

The remaining opinions of Dr. Rezaian, not on matters reserved to the Commissioner, are contained exclusively in the April 2017 and the January 2018 opinions. In the April 2017 opinion, Dr. Rezaian stated that Plaintiff's "[p]resent limitations on activities include difficulty with sitting intermittently after less than one hour, standing intermittently after less than one hour and walking intermittently for less than one hour." R. 1309. In the January 2018 opinion, Dr. Rezaian stated that Plaintiff's limitations included "[n]o sitting standing walking for extended periods of time. No lifting pushing pulling carrying." R. 1525. Both opinions were based on Dr. Rezaian's diagnosis of lupus, R. 1309, 1524, and Dr. Rezaian stated in the April 2017 opinion that he had been treating Plaintiff for lupus for the past four years. R. 1309.

The ALJ provided several reasons why she gave these opinions of Dr. Rezaian little weight. First, the ALJ concluded that "Dr. Rezaian provided no objective findings that would support the functional impairments he has restricted [Plaintiff] to, much less a total incapacity to work." R. 39. Second, the ALJ noted that the first appearance of a diagnosis of lupus was August 2016, so at the time of Dr. Rezaian's April 2017 opinion, he could not have been treating Plaintiff for lupus for four years. Id. Finally, the ALJ noted that "Dr. Rezaian provided no rationale or objective evidence to support his opinions . . . ." Id.

In reaching her conclusions, the ALJ noted that Dr. Rezaian is Plaintiff's treating physician. R. 37 ("The claimant is followed by Michael Rezaian, MD, of Rural Outreach Arthritis Center."). Additionally, the ALJ specifically discussed several examinations (Exhibits 5F, 13F, and 39F) that Dr. Rezaian performed of Plaintiff over approximately

13

three years. R. 37–39. The ALJ also explained that, besides his diagnosis of lupus, the only objective evidence contained in Dr. Rezaian's January 2018 opinion were x-rays of Plaintiff's shoulder, which were normal. R. 38, 1524. Additionally, as the Commissioner points out, the diagnosis of Plaintiff's lupus does not appear in Dr. Rezaian's treatment notes until January 2017. R. 743; see also R. 592 (March 2013, no impression of lupus), 600 (June 2013, no impression of lupus), 604 (August 2013, no impression of lupus), 606 (March 2014, no impression of lupus), 608 (April 2015, no impression of lupus). While Plaintiff had a positive ANA test in 2015 with Dr. Rezaian (which the ALJ acknowledged, R. 37), the ALJ provided a rational interpretation of the record in concluding that Dr. Rezaian had not treated Plaintiff for lupus for four years prior to January 2017.[5] See Snider v. Colvin, No. 6:12-cv-954, 2013 WL 4880158, at *5 (S. D. W. Va. Sept. 12, 2013) ("Where evidence is subject to more than one rational interpretation, a court must uphold an ALJ's findings if those findings are supported by inferences reasonably drawn from the record.").

Furthermore, the ALJ discussed additional evidence throughout her decision that is inconsistent with Dr. Rezaian's opinions of Plaintiff's limitations. She noted that even though Plaintiff has had a positive ANA serologic result, there was "no impairment of strength, sensations, reflexes, or stability documented, no neurological deficit and no imaging abnormalities that would require activity restrictions. . . ." and mild functional limitations "only limited by slight range of motion in multiple joints." R. 31, 745–46, 1187. Similar findings of intact sensations and reflexes, 5/5 motor strength, and normal range

---

[5] At oral argument, Plaintiff conceded that the ALJ's determination that as of April 2017, Dr. Rezaian had not treated Plaintiff for lupus for four years was accurate. Plaintiff simply noted that while Dr. Rezaian had not treated Plaintiff specially for lupus for four years, he had treated her for the same symptoms, which were officially diagnosed as lupus in 2016, over four years.

14

of motion were found in August of 2017 by Jerome T. Kochinsky, D.O and noted by the ALJ. R. 38, 1169. The ALJ also concluded that Plaintiff has shown the continued ability to perform her activities of daily living, including driving a car. R. 31, 34, 1088, 1091, 1097, 1100. In October 2017, Plaintiff reported to her physician that she was working out three to four times per week for one and a half hours at the Wellness Center. R. 31, 40, 1264. Finally, the ALJ discussed Dr. Rezaian's examination notes from January 2018 where he stated that Plaintiff showed "much improvement" in her hips and spine and that her symptoms of lupus were overall getting better than before. R. 39, 1526, 1528.

In conclusion, contrary to Plaintiff's arguments, the ALJ did acknowledge that Dr. Rezaian is Plaintiff's treating physician and had examined her on multiple occasions. The ALJ discussed evidence throughout the relevant period that was inconsistent with Dr. Rezaian's opinion on Plaintiff's limitations. As noted above, the ALJ is not required to explicitly list and assess each regulatory factor, see Pinson, 2009 WL 763553, at *10, as long as she gives sufficient reason to support the weight she has assigned to a particular medical opinion. See Dunn, 607 F. App'x at 267. Here, the undersigned concludes that the ALJ has provided substantial evidence to support her assignment of little weight to Dr. Rezaian's opinions. Because the evidence in the record supports the ALJ's conclusion, the undersigned concludes that the ALJ is not substituting her own lay opinion for those opinions of others and Plaintiff's remaining argument is with without merit. See Gorayeb v. Astrue, 845 F. Supp. 2d 753, 758 (N. D. W. Va. 2011). Although Plaintiff points to some evidence in the record to support her position in her memorandum and although her counsel articulated a factual narrative of the evidence in favor of Plaintiff's position at

oral argument, it is not this Court's role to reweigh the conflicting evidence when reviewing the ALJ's decision. Johnson, 434 F.3d at 653.

## VII. RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for DIB is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No.15] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 17] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845-48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 13th day of March, 2019.

16

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE